UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HOLTEC INTERNATIONAL CORPORATION, a
Delaware Corporation,

      Plaintiff,

v.

PREFERRED METAL TECHNOLOGIES, INC.,
an Illinois Corporation,

      Defendant/Third-Party
      Plaintiff,

v.

UPS GROUND FREIGHT, INC., d/b/a UPS
FREIGHT, f/k/a OVERNITE
TRANSPORTATION,

      Third-Party Defendant.

Civil Action No.:
09-cv-274(RMB)(AMD)

**UPS FREIGHT'S
STATEMENT OF
UNCONTROVERTED
MATERIAL FACTS.**

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS OF THIRD PARTY DEFENDANT, UPS GROUND FREIGHT, INC., d/b/a UPS FREIGHT, f/k/a OVERNITE TRANSPORTATION ("UPS FREIGHT") PURSUANT TO LOC. CIV. R. 56.1 AND IN SUPPORT OF UPS FREIGHT'S MOTION FOR SUMMARY JUDGMENT TO DISMISS THE THIRD-PARTY COMPLAINT.

1. UPS Freight is a federally licensed motor carrier of goods for transport in interstate commerce. Affidavit of Gerry Laverty, UPS Freight Cargo Claims Supervisor ("Laverty Affidavit)."

2. This case involves an allegation of damages to a shipment of metal storage racks from Illinois to Florida that occurred five (5) years ago. See Plaintiff's

Compliant as attached to Notice of Removal, Docket Entry No.: 1.

3. Plaintiff, Holtec International Corporation ("Plaintiff" or "Holtec") sued Defendant/Third-Party Plaintiff, Preferred Metal Technologies ("PMT"). See Plaintiff's Compliant as attached to Notice of Removal, Docket Entry No.: 1.

4. Holtec alleged breach of a purchase contract in connection with two (2) crates of the metal storage racks weighing a combined 2,800 lbs. See Plaintiff's Compliant as attached to Notice of Removal, Docket Entry No.: 1 and see Affidavit of UPS Freight Cargo Claims Supervisor, Gerry Laverty ("Laverty Affidavit"), Exhibit "B," PMT's Bill of Lading.

5. The metal storage racks were shipped in interstate commerce from the location of the shipper, PMT, in Illinois to the consignee, Florida Power & Light in Florida. See Plaintiff's Compliant as attached to Notice of Removal, Docket Entry No.: 1 and see Laverty Affidavit, Exhibit "B," PMT's Bill of Lading.

6. It is alleged that five years ago, in November 2005, the shipment arrived in Florida damaged. See Third-Party Complaint, Docket Entry No.: 13.

7. The transportation of the shipment was made on a

Bill of Lading created by the shipper, PMT. See Laverty Affidavit, Exhibit "B," PMT's Bill of Lading.

8. The motor carrier in this case is Third-Party Defendant, UPS Ground Freight, Inc. d/b/a UPS Freight f/k/a Overnite Transportation ("UPS Freight"). See Laverty Affidavit.

9. UPS Freight maintained classifications and a rules tariff circular in effect at the time of the shipment described in this case. Laverty Affidavit.

10. The UPS Freight Tariff was made available to the shipper, Preferred Metal Technologies ("PMT") as it is to all shippers, upon request pursuant to Federal law, namely the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. Laverty Affidavit.

11. The Bill of Lading, states the shipment was:

"RECEIVED, subject to the classifications and lawfully filed tariffs in effect on the date of the issue of this Bill of Lading."

See Laverty Affidavit, Exhibit "B," PMT's Bill of Lading.

12. The UPS Freight PRO sticker, which is adhered to the PMT Bill of Lading, further states that limitations of liability would apply and also referred to the controlling UPS Freight Tariffs. See Laverty Affidavit, Exhibit "B,"

PMT's Bill of Lading.

13. PMT made the shipment "subject to" the UPS Freight Tariff. Laverty Affidavit, Exhibit "B," PMT's Bill of Lading.

14. The PMT Bill of Lading further provided a space for PMT to declare the value of the shipment to UPS Freight, but PMT decided to leave it blank. The PMT's Bill of Lading states, "[t]he agreed or declared value of the property is hereby specifically stated by the shipper [i.e., PMT] to be not exceeding $_____ per _____." See Laverty Affidavit Exhibit "B," PMT Bill of Lading.

15. As a prerequisite to filing a lawsuit for cargo loss of damage to goods shipped in interstate commerce, the shipper, PMT, was required to send a "claim" to UPS Freight within nine (9) months of the time PMT received notice of the alleged damage or the "claim" is "forever" barred. See Laverty Affidavit, Exhibit "A," Tariff, Item 825.

16. Pursuant to the UPS Freight Tariff (Item 825):

> All claims for loss or damage to property transported by [UPS Freight] must be filed with [UPS Freight] within nine (9) months following delivery . . .. <u>Failure to do so shall forever bar recovery of the claim.</u> Any action at law with respect to such claim must be instituted against carrier within a period of two (2) years and one (1) day from the date of notice from carrier that the claim or any part, or parts, thereof were disallowed.

See Laverty Affidavit, Exhibit "A," Tariff, Item 825.

17. In order to constitute a "Claim," PMT must provide the following information:

   (1) facts sufficient to identify the shipment,

   (2) an assertion of liability for alleged damage, and

   (3) set forth <u>a specified sum or a determinable amount of money</u>.

See 49 CFR § 1005.

18. The PMT Bill of Lading bears a handwritten date of November 21, 2005. See Laverty Affidavit, Exhibit "B," Bill of Lading.

19. A month after the shipment arrived at destination in Florida in November 2005, the shipper, PMT, sent an incomplete claim form dated December 27, 2005 to UPS Freight listing no dollar amount under the heading "Amount of Claim." See Laverty Affidavit, Exhibit "C," PMT form.

20. The shipper PMT only listed the inadequate descriptive phrase "to be determined." See Laverty Affidavit, Exhibit "C," PMT's form.

21. PMT's form was not adequate and failed to meet the requirements of 49 CFR § 1005. It was not a "Claim" as that term is defined by Federal law. See 49 CFR § 1005; Affidavit of Laverty, Exhibit "C," PMT's form.

22. PMT failed to submit a "Claim" within the required nine (9) month period. See 49 CFR § 1005; Affidavit of Laverty, Exhibit "C," PMT's form and Exhibit "A," Tariff.

23. The nine (9) month period to submit a claim to the motor carrier expired in August 2006. Consequently, the PMT case against UPS Freight is time barred because no claim was submitted to the carrier within the nine (9) month period. See Affidavit of Laverty.

24. On January 4, 2006, UPS Freight denied the purported claim and issued a disallowance letter stating, among other things, "before the investigation can begin we are requesting additional information indicated by the document(s) below – Amount of Claim and How Determined." See Laverty Affidavit, Exhibit "D," UPS Freight January 4, 2006 Declination Letter.

25. Although the "claim" by PMT was defective, it was disallowed by UPS Freight. See Laverty Affidavit.

26. Once the "claim" was disallowed on January 4, 2006, PMT had two (2) years and one (1) day from that date to file a lawsuit against UPS Freight and pursuant to the Tariff, PMT had until January 5, 2008 to file a lawsuit against UPS Freight. See Laverty Affidavit, Exhibit "A," Tariff, Item 825. 20.

27. PMT did not file a lawsuit against UPS Freight until May 2009, which is over a year too late. See Third-Party Complaint, Docket Entry No.: 13.

28. PMT had until August 2006 to send a claim that meets the requirements of Federal law, namely 49 C.F.S. § 1005. See Laverty Affidavit.

29. Even if PMT's letter of December 2005 was a "claim," which it was not, UPS Freight disallowed it on January 4, 2006 and PMT failed to file a lawsuit within the two (2) year and one (1) day period of limitations. See Laverty Affidavit.

30. PMT failed to file its lawsuit against UPS Freight until May 2009. PMT had until January 5, 2008 to file a lawsuit against UPS Freight under the two (2) year and one (1) day period of limitations. PMT's lawsuit filed in May 2009 is approximately fourteen (14) months too late past the expiration of the limitations period. The lawsuit against UPS Freight is time barred. See Laverty Affidavit, Exhibit "A," Tariff and Exhibit "B," PMT Bill of Lading and PMT's Third-Party Complaint, Docket Entry No.: 13.

31. In addition to the case being time barred, even if, for some reason, it was not, the amount of the damages is capped at $5,600.00 as per the PMT Bill of Lading incorporating the Tariff. See Laverty Affidavit and

Exhibit "A," Tariff and Exhibit "B," PMT's Bill of Lading.

32. PMT did not declare the value of the shipment to UPS Freight. As PMT's Bill of Lading provided a choice stating, "[t]he agreed or declared value of the property is hereby specifically stated by the shipper [i.e., PMT] to be not exceeding $_____ per _____." See Affidavit of Laverty, Exhibit "B," PMT Bill of Lading.

33. The Tariff (Item 166-A, Section 5) (see Laverty Affidavit, Exhibit "A") sets forth certain applicable commodities for the shipment and the National Motor Freight Classification designations which govern.

34. In this case, the PMT metal storage racks are "metal" or "cabinet[s]" under the National Motor Freight Classification as stated in the Tariff. See Laverty Affidavit, Tariff, Item 166-A, Section 5, Exhibit "A."

35. UPS Freight's liability for cargo damage "is limited to the actual invoice value of the commodities or articles lost, damaged or destroyed, or $2.00 per pound per package . . . whichever is less, unless Excess Declared Value Coverage is requested [by the shipper] and the additional charges are paid." See Laverty Affidavit, Tariff, Item 166-A, Section 5, Exhibit "A."

36. Because PMT chose not to declare the value in its own Bill of Lading (and thus chose to pay a lower freight

rate to the carrier), the limitation of liability applies for this commodity at $2.00/lb. See Laverty Affidavit and Exhibit "A," Tariff and "B," PMT's Bill of Lading.

37. The total weight of the shipment was 2,800 lbs., as listed by PMT on its Bill of Lading (see Laverty Affidavit, Exhibit "B," PMT's Bill of Lading) making the total amount of liability capped at a maximum of $5,600.00. See Laverty Affidavit, Bill of Lading, Exhibit "B" and see Tariff, Item 166-A, Section 5, Exhibit "A."

38. By leaving the declared value portion of the Bill of Lading blank, PMT chose the lowest released rate that UPS Freight had available. See Laverty Affidavit.

39. In these shipping transactions, the shippers usually choose to assume the risk in exchange for paying the lowest possible freight rate. See Laverty Affidavit.

40. Frequently, shippers also choose not to declare the value in the Bill of Lading because they know the freight rate charged will increase and so because shippers usually want the lowest freight rate, they choose not to declare the value in the Bill of Lading. See Laverty Affidavit.

41. The shipper, PMT, prepared the Bill of Lading and included a space for PMT to declare the value. PMT did not declare the value in its own Bill of Lading. See Laverty

Affidavit and Exhibit "B," PMT's Bill of Lading.

42. Had PMT declared the value in its own Bill of Lading, it would have afforded UPS Freight the opportunity to purchase supplemental insurance to cover itself in the event of an accident or a loss and thus minimized its exposure. The cost of the supplemental insurance is of course passed on the shipper through an increased freight rate. See Laverty Affidavit.

43. When PMT chose not to declare the value in the Bill of Lading, UPS Freight relied on PMT's decision and choice that in exchange for a lower freight rate, PMT was telling UPS Freight the most UPS Freight could be liable is capped. See Laverty Affidavit.

44. UPS Freight should not now have to (after the fact) pay a radically higher amount when UPS Freight based the freight rate relying on PMT's decision not to declare a value in the Bill of Lading. See Laverty Affidavit.

45. PMT got the benefit of a lower freight rate by choosing not to declare the value. See Laverty Affidavit.

46. PMT received the benefit of its bargain. See Laverty Affidavit.

47. It cannot now, afterwards, unilaterally change the agreement made between PMT and UPS Freight in the Bill of Lading and make a better agreement for itself than the

one it bargained for.  See Laverty Affidavit.

S/ William D. Bierman
William D. Bierman, Esq.
And
/s/ Thomas C. Martin
Thomas C. Martin, Esq.
Nowell Amoroso Klein Bierman, P.A.
155 Polifly Road
Hackensack, New Jersey 07601
201-343-5001 (t)
201-343-5181 (f)
tmartin@nakblaw.com
Attorneys for Third-Party Defendants,
UPS Ground Freight, Inc. d/b/a
UPS Freight, f/k/a
Overnite Transportation

Dated: November 17, 2010