UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HOLTEC INTERNATIONAL CORPORATION, a
Delaware Corporation,

       Plaintiff,

    v.

PREFERRED METAL TECHNOLOGIES, INC.,
an Illinois Corporation,

       Defendant/Third-Party
       Plaintiff,

    v.

UPS GROUND FREIGHT, INC., d/b/a UPS
FREIGHT, f/k/a OVERNITE
TRANSPORTATION,

       Third-Party Defendant.

Civil Action No.:
09-cv-274(RMB)(AMD)

AFFIDAVIT OF GERRY
LAVERTY IN SUPPORT
UPS FREIGHT MOTION
FOR SUMMARY
JUDGMENT

STATE OF VIRGINIA   :
                        : SS
COUNTY OF RICHMOND :

I, Gerry Laverty, hereby swear and affirm:

    1.   I am employed by UPS Freight as a Cargo Claims Supervisor and I have personal knowledge of the statements made in this Affidavit.

    2.   UPS Freight is a federally licensed motor carrier of goods for transport in interstate commerce.

    3.   UPS Freight maintained classifications and a

rules tariff circular in effect at the time of the shipment described in this case. A true and accurate copy of relevant portions of the Tariff are attached hereto as Exhibit "A."

4. The UPS Freight Tariff was made available to the shipper, Preferred Metal Technologies ("PMT") as it is to all shippers, upon request pursuant to Federal law, namely the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706.

5. To my knowledge, Preferred Metal Technologies did not request a copy of the UPS Freight Tariff.

6. In this case, the Bill of Lading was prepared by the shipper, PMT. See Exhibit "B," a true and accurate copy of the PMT Bill of Lading, which is maintained in our transportation file in the normal course of business.

### THE PMT BILL OF LADING INCORPORATES THE TERMS OF THE UPS FREIGHT TARIFF.

7. The Bill of Lading, which was prepared and filled out by the shipper, PMT, states the shipment was:

> "RECEIVED, subject to the classifications and lawfully filed tariffs in effect on the date of the issue of this Bill of Lading."

See Exhibit "B," PMT's Bill of Lading.

8. The UPS Freight PRO sticker, which is adhered to the PMT Bill of Lading, further states that limitations of

liability would apply and also referred to the controlling UPS Freight Tariffs. See Exhibit "B," PMT's Bill of Lading.

9. PMT made the shipment subject to the UPS Freight Tariff.

### PMT FAILED TO DECLARE A VALUE OF THE GOODS SHIPPED IN ITS OWN BILL OF LADING MEANING THE RELEASED RATE ESTABLISHED IN THE UPS FREIGHT TARIFF APPLIES, IN THIS CASE $5,600.00.

10. The PMT Bill of Lading further provided a space for PMT to declare the value of the shipment to UPS Freight, but PMT decided to leave it blank. As PMT's Bill of Lading states, "[t]he agreed or declared value of the property is hereby specifically stated by the shipper [i.e., PMT] to be not exceeding $_____ per _____." See Exhibit "B," PMT Bill of Lading.

### PMT FAILED TO SUBMIT THE REQUIRED CLAIM TO UPS FREIGHT UNDER FEDERAL LAW AND SO THE MATTER IS "FOREVER" BARRED UNDER THE TARIFF.

11. As a prerequisite to filing a lawsuit for cargo loss of damage to goods shipped in interstate commerce, the shipper, PMT, was required to send a "claim" to UPS Freight within nine (9) months of the time PMT received notice of the alleged damage or the "claim" is "forever" barred. See Exhibit "A," Tariff, Item 825.

12. Pursuant to the UPS Freight Tariff (Item 825):

> All claims for loss or damage to property transported by [UPS Freight] must be filed

with [UPS Freight] within nine (9) months following delivery . . .. <u>Failure to do so shall forever bar recovery of the claim.</u> Any action at law with respect to such claim must be instituted against carrier within a period of two (2) years and one (1) day from the date of notice from carrier that the claim or any part, or parts, thereof were disallowed.

<u>See</u> Exhibit "A," Tariff, Item 825.

13. In order to constitute a "Claim," PMT must provide the following information:

    (1) facts sufficient to identify the shipment,

    (2) an assertion of liability for alleged damage, and

    (3) set forth <u>a specified sum or a determinable amount of money</u>.

49 CFR § 1005.

14. The PMT Bill of Lading bears a handwritten date of November 21, 2005. <u>See</u> Exhibit "B," Bill of Lading.

15. A month after the shipment arrived at destination in Florida in November 2005, the shipper, PMT, sent an incomplete claim form dated December 27, 2005 to UPS Freight listing no dollar amount under the heading "Amount of Claim." <u>See</u> Exhibit "C," a true and accurate copy of the PMT form. Instead, the shipper PMT only listed the inadequate descriptive phrase "to be determined." <u>See</u> Exhibit "C," PMT's form.

16. PMT's purported "claim" was defective because 49 CFR § 1005 requires PMT set forth an amount or a "determinable" amount. A claim that fails to do so is not a claim that tolls the nine (9) month period to file a claim pursuant to the Tariff.

17. Because no claim was sent by PMT, the nine (9) month window to make a claim as a prerequisite to a lawsuit expired in August 2006.

## PMT FAILED TO FILE A LAWSUIT WITHIN THE TWO (2) YEAR AND ONE (1) DAY PERIOD OF LIMITATIONS UNDER THE LAW AND UNDER THE TARIFF AND SO THE CASE IS TIME BARRED FOR THAT REASON AS WELL.

18. In any event, on January 4, 2006, UPS Freight denied the, albeit defective, claim and issued a disallowance letter stating, among other things, "before the investigation can begin we are requesting additional information indicated by the document(s) below – Amount of Claim and How Determined." See Exhibit "D," a true and accurate copy of the UPS Freight January 4, 2006 Declination Letter. Although the "claim" by PMT was defective, it was disallowed by UPS Freight.

19. Once the "claim" was disallowed on January 4, 2006, PMT had two (2) years and one (1) day from that date to file a lawsuit against UPS Freight. See Exhibit "A,"

Tariff, Item 825. Pursuant to the Tariff, PMT had until January 5, 2008 to file a lawsuit against UPS Freight.

20. I understand PMT did not file a lawsuit against UPS Freight until May 2009, which is over a year too late.

21. PMT's case is time barred. PMT had until August 2006 to send a claim that meets the requirements of Federal law, namely 49 C.F.S. § 1005. It did not. Even if PMT's letter of December 2005 was a "claim," which it was not, UPS Freight disallowed it on January 4, 2006 and PMT failed to file a lawsuit within the two (2) year and one (1) day period of limitations.

### SEPARATE FROM BEING TIME BARRED, THE MAXIMUM AMOUNT OF LIABILITY IS CAPPED AT $5,600.00 PURSUANT TO THE PMT BILL OF LADING AND THE TARIFF.

22. In addition to the case being time barred, even if, for some reason, it was not, the amount of the damages is capped at $5,600.00 as per the PMT Bill of Lading incorporating the Tariff.

23. PMT did not declare the value of the shipment to UPS Freight. As PMT's Bill of Lading states, "[t]he agreed or declared value of the property is hereby specifically stated by the shipper [i.e., PMT] to be not exceeding $_____ per _____." See Exhibit "B," PMT Bill of Lading.

24. The Tariff (Item 166-A, Section 5) (see Exhibit "A") sets forth certain applicable commodities for the shipment and the National Motor Freight Classification designations which govern.

25. In this case, the PMT metal storage racks qualify as "metal" or "cabinet" subclasses under the National Motor Freight Classification as stated in the Tariff. See Tariff, Item 166-A, Section 5, Exhibit "A."

26. UPS Freight's liability for cargo damage "is limited to the actual invoice value of the commodities or articles lost, damaged or destroyed, or $2.00 per pound per package . . . whichever is less, unless Excess Declared Value Coverage is requested [by the shipper] and the additional charges are paid." See Tariff, Item 166-A, Section 5, Exhibit "A."

27. Because the shipper chose not to declare the value in its Bill of Lading (and thus chose to pay a lower freight rate to the carrier), the limitation of liability applies for this commodity at $2.00/lb.

28. The total weight of the shipment was 2,800 lbs., as listed by PMT on its Bill of Lading (Exhibit "B," Bill of Lading) making the total amount of liability capped at a maximum of $5,600.00. See Bill of Lading, Exhibit "B" and see Tariff, Item 166-A, Section 5, Exhibit "A."

29. By leaving the declared value portion of the Bill of Lading blank, PMT was choosing the lowest released rate that UPS Freight had available. I believe what happened in this transaction is what many shippers do - by choosing not to declare a value, the shipper selects the lowest possible released rate in exchange for the lowest freight rate charged to the shipper.

30. In these shipping transactions, the shippers usually choose to assume the risk in exchange for paying the lowest possible freight rate.

31. Frequently, shippers also choose not to declare the value in the Bill of Lading because they know the freight rate charged will increase and so because shippers usually want the lowest freight rate, they choose not to declare the value in the Bill of Lading.

32. The shipper, PMT, prepared the Bill of Lading and included a space for PMT to declare the value. PMT did not declare the value in its own Bill of Lading.

33. Had PMT declared the value in its own Bill of Lading, it would have afforded UPS Freight the opportunity to purchase supplemental insurance to cover itself in the event of an accident or a loss and thus minimized its exposure. The cost of the supplemental insurance is of

course passed on the shipper through an increased freight rate.

34. When PMT chose not to declare the value in the Bill of Lading, it means UPS Freight had a right to rely on PMT's decision and choice that in exchange for a lower freight rate, PMT was telling UPS Freight the most UPS Freight could be liable is capped.

36. UPS Freight should not now have to (after the fact) pay a radically higher amount when UPS Freight based the freight rate relying on PMT's decision not to declare a value in the Bill of Lading. PMT would be getting the benefit of a lower freight rate by choosing not to declare the value. PMT received the benefit of its bargain. It cannot now, afterwards, unilaterally change the agreement made between PMT and UPS Freight in the Bill of Lading and make a better agreement for itself than the one it bargained for.

[Signature Page Follows]

_____
S/ Gerry Laverty
Gerry Laverty

Sworn & subscribed before me on:
Dated:    November 17, 2010

Notary Public

_Antoinette Brandon_
_____



# EXHIBIT "A"

ITEM 824

## LTL NO-FEE GUARANTEE

UPS Freight LTL No-Fee Guarantee is Carrier's delivery or attempted delivery of a shipment in accordance with Carrier's normal transit standard in effect on the date of shipment, subject to the conditions below.

1. UPS Freight LTL No-Fee Guarantee is only applicable on LTL shipments originated and delivered by Carrier between direct points in the contiguous United States, and between direct points in the contiguous United States and points in Canada (shown as being serviced by UPS Freight's Calgary, AB (CAL), Edmonton, AB (EDM), Halifax, NS (DAR), Moncton, NB (MCT), Montreal, PQ (MTL), Toronto, ON (TOR), Vancouver, BC (VAN), Windsor, ON (WDR) and Winnipeg, MB (WPG) service centers) where the rates are determined from the current, non-frozen, UPGF 500, 505, 525 or 560 base rate tariff. The No-Fee Guarantee is not applicable when the pickup or delivery is made by agents (except agents in Canada) on behalf of UPS Freight, nor on interline or partner shipments.

2. Shipment must be picked up by Carrier no later than 5:00 P.M. local time. No-Fee Guarantee does not include missed pickups.

3. Carrier guarantees to make shipment available for delivery by end of day (11:59 P.M. local time) on or before the date advertised by Carrier for delivery service from eligible origin zip codes to eligible destination zip codes. The consignee/receiver must be open and willing to accept shipment delivery up to 5:00 P.M. local time. After 5:00 P.M. local time, the delivery shall be considered late only if the consignee's receiving department is closed.

4. The LTL No-Fee Guarantee provisions of this item are not applicable in the following circumstances:
    a. When the shipment is delayed because the freight tendered does not match the information shown on the bill of lading, or delayed due to missing, incomplete or inaccurate documentation.
    b. When the delay or failure to perform is the result of Impractical Operations, Acts of God, inclement weather, industry disruptions, fires, strikes, the public enemy, the authority of law including customs inspections, a disruption in communications or an information systems failure.
    c. Where special delivery requirements or conditions apply, such as but not limited to:
        i. Appointments
        ii. Notification prior to delivery, including Customer Pickup at Carriers service center
        iii. Use of Lift Gates or Special Equipment
        iv. Shipments requiring Protective Services
        v. Shipments held for consolidation
        vi. Shipments requiring Collect on Delivery (COD)
        vii. Hazardous Materials
        viii. Private Residential deliveries
        ix. Requiring delivery on Holidays and Weekends
        x. Blackout periods as may be listed on Carriers website
        xi. Limited Access Points
        xii. Remote and rural delivery points
        xiii. U.S. Domestic islands
        xiv. Sorting and Segregating
        xv. Trade Show deliveries
        xvi. On shipments consisting of carpeting or linoleum
        xvii. Requiring dropped trailers for consignee unloading
        xviii. Extreme Length shipments
        xix. Shipments subject to truckload rates
        xx. Shipments subject to Capacity Load
        xxi. Shipments subject to Cubic Capacity and Density
        xxii. Shipments subject to provisions of blind shipments
        xxiii. Lost or damaged shipments
        xxiv. Reconsigned Shipments
        xxv. Shipments made by or arranged through a third party retailer package store or reseller of package and transportation services.

5. Failure by Carrier to have the shipment available for delivery by the delivery date as indicated above, due to no fault of Shipper or consignee, will result in cancellation of freight charges, including the fuel surcharge (with the exception of any applicable and performed accessorial service charges) for that shipment. Requests by the debtor for cancellation of charges or for refunds of any paid freight charges must be directed to (800) 333-7400 within 15 calendar days of actual delivery date. No agent, representative or third party may file on behalf of the debtor and no refunds will be made to any party other than the debtor. Carrier's sole liability under this rule shall be limited to the refund or cancellation of the freight charges only. Carrier shall not be liable for any indirect, consequential, special, exemplary or incidental expenses, damages or claims arising from failure to deliver as agreed even if it has been advised of the possibility of such damages.

6. Carrier reserves the right to modify, suspend or terminate this LTL No-Fee Guarantee at any time.

ITEM 825

## CARGO CLAIM FILING TIME LIMITS

All claims for loss or damage to property transported by Carrier must be filed with Carrier within nine (9) months following delivery and in the case of non-delivery nine (9) months following the date the shipment would have delivered. Failure to do so shall forever bar recovery of the claim. Any action at law with respect to such claim must be instituted against Carrier within a period of two (2) years and one (1) day from the date of notice from Carrier that the claim or any part, or parts, thereof were disallowed.



ITEM 166-A (continued)

SECTION 5 - LIABILITY FOR SPECIFIC COMMODITIES OR ARTICLES

The following list of commodities or articles are subject to the liability limitations and conditions shown below:

| COLUMN 1 COMMODITIES OR ARTICLES | COLUMN 2 AS DESCRIBED IN NMFC ITEMS AND SUB NUMBERS |
|---|---|
| Furnaces, house heating, hot air | 26280 |
| Heaters, water, NOI | 26520 |
| Cards or tickets, paper or plastics | 40750 S1, *S2, **S3 |
| Bus Bar System, NOI | 61080 |
| Controllers or Controller Parts, NOI | 61480 |
| Furniture, fibreboard, particleboard, unassembled | 79465 |
| Furniture, metallic or wooden, NOI | 82270 |
| Tops, cabinet, chest, counter, desk, stool, table | 83620 |
| Air Coolers, Air Conditioners, or Heat Pumps | 114125 |
| Air Handlers, Refrigeration Evaporators | 114126 |
| Compressors, air; or Air Ends, NOI | 118100 |

Carrier's liability for loss, damage, or destruction to any shipment or part thereof, for the commodities or articles described in columns 1 and 2 above, is limited to the actual invoice value of the commodities or articles lost, damaged or destroyed, or $2.00 per pound per package (*40750 S2 $3.00 per pound per package and **40750 S3 $4.00 per pound per package), whichever is less, unless Excess Declared Value Coverage is requested and the additional charges are paid.

SECTION 6 – LIABILITY – MEXICO (See Section 2 of this Tariff).

SECTION 7 – LIABILITY – CANADA

Carrier's liability for loss, damage, or destruction to any shipment or part thereof in connection with shipments originating in the provinces of Canada is limited to the (1) actual invoice value of the commodities or articles lost, damaged or destroyed; (2) limited liability provisions of the Bill of Lading; or, (3) applicable limited liability provisions of the NMFC; whichever is less, subject to a maximum liability of $2.00 (Canadian dollars) per pound based on the entire weight of the shipment, unless Excess Declared Value Coverage is requested. Commodities or articles accepted with an invoice value exceeding $2.00 (Canadian dollars) per pound without a specific request for Excess Declared Value Coverage will be considered to have been released by the shipper at a maximum of $2.00 (Canadian dollars) per pound.

SECTION 8 – LIABILITY – VOLUME PRICE QUOTES

Carrier's liability for loss, damage, or destruction to any shipment or part thereof in connection with volume price quotes or Streamline Volume Price Quotes will be governed by the terms of the volume price quote, but in no event shall Carrier's liability be greater than the actual invoice value of the damaged or lost commodities or articles. In cases where Carrier's liability is not established by the terms of the volume price quote, Carrier's liability will be limited to the (1) actual invoice value of the commodities or articles lost, damaged or destroyed; (2) limited liability provisions of the Bill of Lading; or, (3) applicable limited liability provisions of the NMFC; whichever is less, subject to a maximum liability of $1.25 per pound per package. In no case shall Carriers liability exceed $10,000.00 per shipment. This section is not subject to item 166-1.

SECTION 9 – LIABILITY – UPS FREIGHT LTL URGENT

1. Urgent shipments (as defined in Item 822), moving "out-of-network", if loss or damage occurs, Carrier's liability for loss or damage will be $0.50 per pound per package, unless "Excess Declared Value Coverage" is specifically requested along with the amount of coverage needed in writing on the bill of lading at the time of shipment and applicable charges are paid.

2. Urgent shipments (as defined in item 822) moving "in-network" if loss or damage occurs, Carrier's liability for loss or damage will be subject to the terms and conditions otherwise stated herein this item 166.

# EXHIBIT "B"

UNIFORM STRAIGHT BILL OF LADING
ORIGINAL—NOT NEGOTIABLE.   Shipper's No. _____

Preferred Metal Technologies Inc   Company   Agent's No. _____

RECEIVED, subject to the classifications and lawfully filed tariffs in effect on the date of the issue of this Bill of Lading.

At 140 E Tower Drive - R. Ridge, IL  Nov. 21, 2005  From _____
                                      CA527

Consigned to Florida Power & Light – Turkey Point Nuclear Power Plant
Destination 10 miles East of US Route #1  State of FL 33434  County of _____
On Palm Drive - Florida City,
Route _____

Delivering Carrier Overnight Transportation  Car Initial _____  Car No. _____

| NO. PACKAGES | DESCRIPTION OF ARTICLES, SPECIAL MARKS AND EXCEPTIONS | *WEIGHT (Subject to Correction) | CLASS or RATE | CHECK COLUMN | |
|---|---|---|---|---|---|
| One Crate | 35"w x 36"H x 193"L Containing Rack Saver Panels & Installation Tooling (Tooling In Separate Containers On Top Of Crate) | Approx. 1,500 lbs | | | |
| One Crate | 35"w x 26"H x 193"L Containing Rack Saver Panels | Approx 1,300 lbs | | | |
| | Ref. Pickup No. 971-343  PMT PO# 3529 | | | | |

Shipper, Per _____  AGENT _____  PER _____ (1)

Permanent postoffice address of shipper _____

CGO  921 340 232

OWT 491129
11-21-05
2-Crates
16 Linear ft Long

Trailer 510022
Miami Service Center

PMT: 000059

# EXHIBIT "C"



## Overnite Transportation CO.
P.O. Box 1216 – Richmond, VA 23218
Fax# (804) 231-8777

## CLAIM FOR LOSS OR DAMAGE

| | |
|---|---|
| Preferred Metal Technologies, Inc. | December 27, 2005 |
| Claimant | Date |
| 140 East Tower Drive | PMT Job #N1465- PMT PO #3529 |
| Claimant Mailing Address | Claimants File Number (Claimant Assigns) |
| Burr Ridge, IL 60527 | To Be Determined |
| City, State, Zip | Amount of Claim |
| 630-320-7770 | CGO-921-340-232 |
| Phone Number | Overnite Freight Bill |
| Allen Cutler - Project Manager | November 21, 2005 |
| Claimant Contact Name | Shipment Date (Pick Up Date) |
| Preferred Metal Technologies, Inc. | CGO-921-340-232 |
| Shipper | Bill of Lading Number (If Know) |
| Florida Power & Light - Turkey Point Station | |
| Consignee | |

### DETAILED STATEMENT SHOWING HOW AMOUNT OF CLAIM IS DETERMINED

SHORT _____   DAMAGED Yes _____   OTHER _____

| | |
|---|---|
| Damage sustained to crate and contents. Site inspection of damage required by our customer. | |
| Damaged crate was repaired at site and shipped back to PMT plant for inspection and repairs to contents. | |
| Claim, when complete, will consist of (but not be limited to) cost of site inspection, crate repairs, cost of return shipping, | |
| re-inspection of product, repairs to damaged product, repackaging and handling and return shipment to FP&L. | |

*Use separate page if additional room is needed.*
Please retain all salvage until the claim is concluded by OVERNITE.

### THE FOLLOWING DOCUMENTS ARE SUBMITTED IN SUPPORT OF THIS CLAIM

☐ Original vendor's invoice            ☐ Bill Of Lading
☐ Overnite paid freight bill           ☐ Inspection Report
☐ Applicable repair bill, or replacement freight bill

Remit to address if different from above:

Note: Supporting documents will be submitted when all work caused by shipping damage has been completed and inspected / repaired product has been re-shipped and accepted by PMT's customer.

Submit Claim To:

    Overnite Transportation Company
    Corporate Claims Service
    PO BOX 1216
    Richmond, VA 23218-1216

Reminder: Your claim can be faxed to us at (804)-231-8777.
         Office Hours: 8:00 AM to 4:45 PM EST.

PMT: 000099

# EXHIBIT "D"

# OVERNITE TRANSPORTATION, A UPS COMPANY

PO Box 1216/ Richmond, VA, 23218-1216 ph: (800) 333-7400 fax: 804-231-8795

January 04, 2006

Preferred Metal Technologies, Inc
140 East Tower Drive
Burr Ridge, IL, 60527

Re:    Overnite Claim No.    837502
    Your Claim No.    PMT Job#N1465-PMT PO#3529
    Overnite Pro.    921340232
    Claim Amount    $NA

Dear Customer:

We acknowledge receipt of the above referenced claim. However, before the investigation can begin we are requesting additional information indicated by the document(s) below.

We apologize for this inconvenience and thank you for your cooperation.

Sincerely,

Corey Williams
Claim Investigator

_____ Copy of Original Purchase Invoice as billed to your customer.

_____ Copy of Original Purchase Invoice as billed by your supplier.

_____ Copy of Original Purchase Invoice to verify that cost of repairs does not exceed the actual value of goods.

_____ Copy of the Original Bill of Lading

_____ Itemized Repair Bill

_____ Paid Freight Bill, as required by The Code of Federal Regulations Title 49 C.F.R. Sec 1005.5

✓ Weight of merchandise claimed as lost or damaged.

✓ Amount of Claim, and how determined.

_____ Description of lost freight. (spec sheets also, if available)

_____ Other-

PMT: 000106