UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HOLTEC INTERNATIONAL CORPORATION, a
Delaware Corporation,

        Plaintiff,

v.

PREFERRED METAL TECHNOLOGIES, INC.,
an Illinois Corporation,

        Defendant/Third-Party
        Plaintiff,

v.

UPS GROUND FREIGHT, INC., d/b/a UPS
FREIGHT, f/k/a OVERNITE
TRANSPORTATION,

        Third-Party Defendant.

Civil Action No.:
09-cv-274(RMB)(AMD)

**ORAL ARGUMENT IS
RESPECTFULLY
REQUESTED**

## REPLY BRIEF OF THIRD-PARTY DEFENDANT, UPS GROUND FREIGHT, INC., d/b/a UPS FREIGHT, f/k/a OVERNITE TRANSPORTATION, IN RESPONSE TO OPPOSITION OF PREFERRED METAL TECHNOLOGIES AND IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT.

Of Counsel,

William D. Bierman, Esq.

On the Brief,

William D. Bierman, Esq.
Thomas C. Martin, Esq.

NOWELL AMOROSO
KLEIN BIERMAN, P.A.
Thomas C. Martin, Esq.
155 Polifly Road
Hackensack, New Jersey 07601
Telephone: (201) 343-5001
Facsimile: (201) 343-5181
E-mail: tmartin@nakblaw.com
Attorney for Third-Party
Defendants, UPS Ground
Freight, Inc. d/b/a UPS
Freight, f/k/a Overnite
Transportation

There are several straightforward reasons why UPS Freight's motion for summary judgment should be granted.

First, PMT failed to make a "Claim" within the meaning of Federal law, 49 C.F.R. § 1005. PMT failed to set forth an amount or a determinable amount of money for the "Claim."

Second, even if one were to assume PMT filed a proper "Claim," which it did not, it was disallowed by UPS Freight and PMT failed to bring suit within the 2 year and 1 day period of limitation. A disallowance does not need to use any magic words. PMT never set forth an amount until PMT filed and served the Third-Party Complaint.

Third, as to the limitation of liability, PMT struggles to interject an issue called "material deviation" (a concept from Admiralty Law involving a different law, the Carriage of Goods by Sea Act "COGSA") to try to convince the Court PMT should not be bound to its agreement with the carrier. "Material deviation" does not apply to over the road motor carriage, which is governed by the Carmack Amendment to the Interstate Commerce Act. PMT cites 2 non-binding cases from the Southern District of New York, Praxair and Nippon Koa in support of its argument. Neither case is binding in the Third Circuit. Both cases are in direct contravention of Second Circuit precedent and are contrary to the law in the Third Circuit.

PMT is in no position to argue over discovery. PMT failed

1

to answer UPS Freight's discovery and failed to appear for depositions. See Certification of Counsel.

Similarly, the Affidavit of Timothy Stewart is improper and should be struck because it purports to state facts that are not supported by the record. PMT cannot create a question of fact where none exists.

No one disputes the authenticity of the PMT Bill of Lading, the PMT letters attached to the Certification of Scott Haworth, the Tariff or the other documents in the record. "Speculation, unsupported by facts in the record, is insufficient to create a genuine issue of material fact and falls short of what is required to survive summary judgment." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### PMT'S PURPORTED "CLAIM" FAILED TO SET FORTH A "SPECIFIED SUM OR A DETERMINABLE AMOUNT."

A "Claim" must, among other things, set forth a "specified sum or a determinable amount," otherwise it is not a "Claim." 49 C.F.R. § 1005. PMT failed to provide a dollar amount or a determinable amount. See Exhibits "D" through "L" to Declaration of Scott Haworth.

- Exhibit "D" is an e-mail from PMT dated December 5, 2005, a few weeks after the alleged damage. No dollar amount is provided.

- Exhibit "E," is a facsimile from PMT of December 6, 2005. Again, no dollar amount is provided. The following page is an e-mail response from Overnite (UPS Freight's predecessor) asking "[d]o you have an idea of the amount

2

of damage at this point?" No dollar figure was provided by PMT in response.

- Exhibit "F" is another e-mail from PMT. It is dated December 9, 2005. No dollar amount is communicated.

- Exhibit "G," is a December 12, 2005 e-mail from PMT forwarding a December 6, 2005 e-mail. No dollar amount is mentioned.

- Exhibit "H" is PMT's attempted "claim" dated December 27, 2005 and an accompanying letter. No dollar amount is provided in either the "claim" or in the accompanying letter.

- Exhibit "I" is the UPS Freight declination letter dated January 4, 2006 because no dollar figure was provided.

PMT then fell silent and provided absolutely no response for a surprising seven (7) months. On July 31, 2006, PMT states it is "negotiating" with the consignee and feels 21 of 50 Racksavers sustained some sort of unspecified damage. See Exhibit "J" to Haworth Affidavit. No dollar amount is provided. As of that time, July 31, 2006, PMT was still within the 9 month period to make a claim.

Incredibly, a year later on November 27, 2006 PMT writes to UPS Freight stating it is still "negotiating" and that the negotiation would then "allow [PMT] to complete this claim process." See Exhibit "K." PMT's letter shows it did not think it made a "claim" at least not a "claim" that was "complete." Again, no dollar amount is provided.

By that time, the nine month period had closed.

PMT submits nothing for the remainder of 2006 and nothing at all during the entire year 2007. 2 years and 4 months past

3

the incident, PMT writes on March 20, 2008 (see Exhibit "L"):

> PMT has been unable to date to quantify the amount of the Claim because PMT and its customer have been unable to agree on the requisite repairs to the damaged components" and "[w]e will advise Overnite *if and when* Holtec International makes any monetary claim against PMT. See Exhibit "L" (emphasis added)

The vague and noncommittal statements by PMT do not set forth an amount or a "determinable amount." If PMT was "negotiating" all PMT had to do was tell UPS Freight what PMT's "number" was. At least that way, UPS Freight could have an understanding of an amount for which PMT was looking.

In Lewis v. Atlas Van Lines, 542 F.3d 403 (3d Cir. 2008), a case PMT relies upon, the Court considered whether an asserted "claim" was "determinable." In that case, plaintiff alleged a cargo delay claim for failure to transport household goods within a specified time frame which caused a breach of the plaintiff's closing on the sale of his Pennsylvania residence. The plaintiff sent a detailed claim letter within the 9 month period alerting the carrier plaintiff sought lost profit on the sale of his Pennsylvania residence and additional mortgage payments thereon. Id. Those amounts were "determinable" under 49 C.F.R. § 1005 because they were "capable of being determined or ascertained" upon the sale of the Plaintiff's house. Id. An assertion of other miscellaneous claims by plaintiff were rejected by the District Court and by the Third Circuit because those "claims" were not "determinable." Id.

PMT's sporadic letters saying it was "negotiating" (Exhibit "J"); it still needed to make a "complete" claim (Exhibit "K"); it was "unable to date to quantify the amount of the Claim because PMT and its customer have been unable to agree on the requisite repairs to the damaged components" (Exhibit "L") and PMT "will advise Overnite *if and when* Holtec International makes any monetary claim against PMT," Exhibit "L," (emphasis added) do not state a dollar amount or a "determinable" amount. PMT is merely negotiating with its customer and "*if and when* Holtec International makes any monetary claim against PMT," (in some unspecified amount, at time in the future based on some unknown facts), apparently PMT then at that time intended to make a "Claim." PMT failed to make a Claim because its letters and e-mail over years failed to set forth a dollar amount or a "determinable" amount.

PMT then attempts to distinguish S & H Hardware & Supply, Inc. v. Yellow Transportation, Inc., 432 F.3d 550 (3d Cir. 2005). Nevertheless, it must be kept in mind despite PMT's contention S & H employed a lenient substantial compliance review of the requirements of a "Claim," the United States District Court for the Eastern District of Pennsylvania had no problem granting summary judgment because the "claim" was insufficient. The Third Circuit, even after reciting a substantial compliance standard, fully affirmed the summary judgment. The real import of S & H Hardware is that it

5

"illustrates how failure to comply with a simple, statutory requirement can preclude consideration of the merits of the underlying claim." Id. at 551.

Foam Fair Industries, Inc. v. J.K. Hackl Transportation Services, Inc., 2009 WL 2778446 (D.N.J. 2009) is not applicable because, in that case, the claim specifically contained a dollar amount. In the instant case, PMT provided no dollar amount. In Foam Fair, the shipper provided eight pages of estimates. As Your Honor put it, the purpose of the shipper's eight pages with cost estimates "convey[ed] an estimate of the cost plaintiff sought to recover. Indeed, a cost estimate is not only supplied; it is itemized in great detail." Foam Fair at * 3.

In contrast to Foam Fair in the instant case, PMT provided none of the required cost estimates to UPS Freight. No estimates were provided by PMT; no itemization; no invoices, in short nothing setting forth the dollar amount claimed was provided to UPS Freight until it was served with the Third-Party Complaint.

The shipper, pursuant to Federal law, has to tell the motor carrier the amount involved. It is not up to the carrier to guess whether the amount in dispute is $1.00, $1,000.00, $100,000.00, $1,000,000.00 or more and to allocate its resources accordingly depending on the amount alleged.

In October 2007, PMT declared the value of another shipment of "Racksavers" at $104,000.00. See Certification of Counsel Exhibit "A, October 15, 2007 PMT Bill of Lading. That Bill of

6

Lading was produced by Plaintiff, Holtec, in discovery. Importantly, PMT, a corporate entity capable of shipping goods across the country, had knowledge and wherewithal to declare the value of one crate of "Racksavers" at $104,000.00 on a Bill of Lading. PMT immediately had all of the requisite knowledge and knew the value of its allegedly damaged shipment with respect to UPS Freight. PMT simply failed to timely act.

**THE THIRD-PARTY COMPLAINT IS FURTHER TIME BARRED BECAUSE PMT FAILED TO BRING A LAWSUIT WITHIN 2 YEARS AND 1 DAY OF THE JANURY 4, 2006 DECLINATION OF PMT'S PURPORTED "CLAIM."**

Even if PMT submitted a "Claim" within the requirements of Federal law, which it did not, PMT failed to sue within two (2) years and one (1) day of the declination.

PMT has no response to the Court's ruling in Salzstein v. Bekins Van Lines, Inc., 993 F. 2d 1187 (5th Cir. 1993), a case precisely on point. The shipper failed to provide an estimate within the required nine (9) month period and therefore failed to provide a "determinable" amount as is required by Federal law. That is what happened in the instant case.

Regarding the sufficiency of UPS Freight's disallowance, PMT also glosses over the Third Circuit's decision in Polaroid Corp. v. Hermann Forwarding Co., 541 F.2d 1007 (3d Cir. 1976).

The Third Circuit in Polaroid Corp., held in order to qualify as a disallowance of a claim "the word 'disallowance' need not be used in the notice so long as the terms used sufficiently convey to the claimant that the claim is disallowed

in whole or in part." Id. at 1011 (citations omitted).

The "magic words," "disallowed" are not necessary for UPS Freight to deny the document submitted by PMT (even if the document constituted a "Claim" under the Federal Regulations). Ironically, PMT argues its alleged "Claim" does not need to be specific, but on the other hand, argues UPS Freight's disallowance must be specific. PMT cannot have it both ways.

**THERE IS NO "MATERIAL DEVIATION" IN A CARMACK CASE.**

As to the limitation of liability, PMT struggles to drag an admiralty concept called "material deviation" into a Carmack case to convince the Court PMT should not be bound. But that argument fails for a number of important reasons.

First, we need not even reach the issue because PMT failed to file a "Claim" and, on top of that, failed to file the Third-Party Complaint in a timely manner.

Secondly, "material deviation" is a concept from Admiralty Law governed by a completely different Federal law, the Carriage of Goods by Sea Act ("COGSA"). It does not apply to cases governed by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706.

As a recent Court explained:

The "so-called material deviation doctrine, has been long recognized in admiralty law and is codified in § 30701 Sec. 4(4)," Carriage of Goods by Sea Act, 46 U.S.C. § 30701.

"The Carmack Amendment contains no provision similar to § 30701 Sec. 4(4)."

8

KLLM, Inc. v. Watson Parma, Inc., 634 F.Supp.2d 699, 707 – 709 (S.D. Ms. 2009).

> Significantly, Congress has statutorily regulated both admiralty and motor carrier law, and it has never seen fit to adopt a material deviation doctrine in the later context.
>
> KLLM, Inc.

The fact Congress has not adopted a "material deviation" doctrine for Carmack speaks volumes to the fact it does not belong here. Congress knows how to amend legislation when it chooses. It has spoken and chose not to create a "material deviation" doctrine for Carmack. See also Wesley S. Chused, Esq., *Evolution of Motor Carrier Liability Under The Carmack Amendment Into The 21st Century*, Transp. L. J., Vol. 36. No. 2. University of Denver Sturm College of Law (2009).

The "material deviation" admiralty doctrine "has no application in the context of regulated interstate commerce, which is governed by the overriding federal policy of uniformity." Rocky Ford Moving Vans, Inc. v. United States, 501 F.2d 1369, 1372 (8th Cir. 1974). See also Chused.

In the Third Circuit, the admiralty concept of "material deviation" is severely truncated and strictly limited as follows, "nothing short of intentional destruction or conduct in the nature of theft of the property will permit a shipper to circumvent the liability limitations in a released value provision." American Cyanamid Co. v. New Penn Motor Exp., Inc.,

9

979 F.2d 310, 315 (3d Cir. 1992).

There is no "intentional destruction" and no "theft" in this case. Under the controlling law in this circuit, there is no "material deviation" exception.

"This is an understandable and desirable result, as a shipper can protect itself from loss by paying for a higher level of protection." American Cyanamid Co. Shippers "protect" themselves from loss or damage by declaring the value of the article on the Bill of Lading in exchange for a higher released rate.

The unwarranted expansion of admiralty "material deviation" from COGSA has not gained significant traction." KLLM, Inc. v. Watson Parma, Inc., 634 F.Supp.2d 699, 707 -709 (S.D. Ms. 2009).

See Also Rocky Ford Moving Vans, Inc. v. United States, 501 F.2d 1369 (8th Cir.1974)("[A]dmiralty law doctrine has no application in the context of regulated interstate commerce, which is governed by the overriding federal policy of uniformity."); Kan. City Fire & Marine Ins. Co. v. Consol. Rail Corp., 80 F.Supp.2d 447, 451 (E.D.Pa.1999) (material deviation doctrine has not been extended beyond admiralty context); Conoco, Inc. v. Andrews Van Lines, Inc., 526 F.Supp. 720, 722 (W.D. Ok.1981) (adopting Rocky Ford Moving Vans, 501 F.2d 1369) and Toppan Photomasks, Inc. v. North American Van Lines, Inc., 2007 WL 173904, at *3 (S.D. Tx. 2007).

Moreover, PMT cannot prove "material deviation" caused the

10

alleged damage. There is no causal link between the alleged request for exclusive use of a trailer and the cause of the damages alleged. Even PMT asserts it was caused by either being dropped by a forklift or impaled. See Affidavit of Stewart. But that has nothing to do with exclusive use.

The cases PMT cites from the Southern District of New York Praxair and NipponKoa are non-binding and both decisions are directly contrary to precedent in the Second Circuit, Lichten v. Eastern Airlines, 189 F.2d 939 (2d Cir. 1951) and Tishman & Lipp, Inc. v. Delta Air Lines, 413 F.2d 1401 (2d Cir. 1969) and the Third Circuit. American Cyanamid.

The PMT Bill of Lading does not say anything about exclusive use and so is not part of the contract. Wallace Steel, Inc. v. Ingersoll-Rand Co., 739 F.2d 112 (2d Cir. 1984).

As stated by the Untied States Supreme Court:

> To permit such a declared valuation to be overthrown by evidence aliunde the contract, for the purpose of enabling the shipper to a recovery in a suit for loss or damage in excess of the maximum valuation thus fixed, would both encourage and reward undervaluations, and bring about preferences and discriminations prohibited by law. Such a result would neither be just nor conducive to sound morals or wise policies.

Kansas City Southern Railway Co. v. Carl, 227 U.S. 639, 652 (1913).

In Kan. City Fire & Marine Ins. Co. v. Consol. Rail Corp., 80 F.Supp.2d 447, 451 (E.D. Pa. 1999) (opining that material deviation doctrine has not been extended beyond admiralty

11

context), separate and apart from the Bill of Lading, the shipper sent a fax requesting an increased level of liability. But that fax was not part of the Bill of Lading and the terms and conditions that control. Under the plain terms of the bill of lading there is no ambiguity that the bill of lading is the governing contract. St. Paul Travelers Ins. Co. v. M/V MADAME BUTTERFLY, 700 F.Supp.2d 496, 505 (S.D.N.Y. 2010).

Praxair, had a specific notation on the Bill of Lading for extra protections such as "Blanket Wrap." In the instant case, the Bill of Lading is silent and has no mention of the exclusive use PMT says it requested in a separate fax which is not part of the Bill of Lading. Not only is it non-binding and likely against Second Circuit precedent, Praxair is distinguishable. In NipponKoa Ins. Co. v. Watkins Motor Lines, Inc., 431 F.Supp.2d 411, 418 (S.D.N.Y.2006), unlike the instant case, a substantial lengthy separate agreement negotiated between the parties controlled the shipment, not a Bill of Lading.

**PMT's CERTIFICATION OF TIMOTHY STEWART IS SELF-SERVING AND FAILS TO PRODUCE THE DOCUMENT REFERRED TO THEREIN AND SHOULD BE STRUCK.**

PMT's representative, Timothy Stewart, fails to provide the required information or documents to support his contention that PMT "paid a premium" to UPS Freight. Fed. R. Civ. P. 56 requires a non-movant present facts and documents referred to in opposition. PMT fails to provide an invoice, a check, a bank statement or any documentary proof whatsoever it allegedly "paid

a premium" to UPS Freight. A mere denial referring to a document is insufficient to create a question of fact. The document must be produced. <u>Blair v. Scott Specialty Gases</u>, 283 F.3d 595, 608 (3d Cir. 2002); <u>Cowgill v. Raymark Industries, Inc.</u>, 780 F.2d 324, 326 n. 2 (3d Cir. 1986) and Fed. R. Civ. P. 56 (c)(1)(A) requiring that a non-movant must support its assertion of a genuine issue of material fact by providing the document and "citing to . . . materials in the record, including . . . documents . …" The Affidavit of Timothy Stewart is defective. He asserts PMT paid a premium over the normal freight rate for a service, but he fails to provide any documents. A mere assertion is insufficient. PMT has no proof it paid an additional amount for exclusive use.

Freight bills are destroyed after 3 years. This is why it is important for shippers to make a timely claim and to file a timely lawsuit. <u>See</u> Declaration of Gerry Laverty.

**THE DAMAGES ARE CAPPED NO MATTER THE DESCRIPTION OF THE GOODS.**

PMT now after the fact attempts to provide a different description of the freight in the Affidavit of Timothy Stewart. The rule requiring the shipper to properly fill out the bill of lading arises from the fact the motor carrier is bound to the terms and conditions of the bill of lading as well. <u>United Video Buyers v. North Penn Transfer</u>, 211 N.J. Super. 584, 590 (App. Div. 1986) ("[i]t is not too much to say that a carrier

13

may insist that all such documents be prepared in conformance with the requisite regulations before it may be held liable for deviating from the shipper's instructions").

Without conceding the point, PMT argues the goods should be classified differently. PMT is estopped from making that argument because PMT, not UPS Freight, described the cargo on the PMT Bill of Lading.

No matter what PMT now wants to call the cargo, the maximum amount of the liability is capped at $25.00/lb. no matter the commodity. See Laverty Declaration, Exhibit "A."

Based on the weight of 2,500 lbs. on the Bill of Lading, assuming PMT could prove liability the maximum under any set of facts that UPS Freight could be liable for is $70,000.00. UPS Freight is not conceding the point and is not accepting PMT's after-the-fact description of the goods.

Lastly, PMT has no argument over discovery. PMT failed to answer UPS Freight's discovery and failed to appear for depositions. See Certification of Counsel. The Court extended discovery after our motion was filed because a representative of the Plaintiff was experiencing a health related issue. That has nothing to do with the documents in this case.

PMT cannot create an issue that does not exist. There is no dispute over the authenticity of the PMT Bill of Lading, the PMT letters, the Tariff or the other documents. PMT's unsupported assertion is not competent evidence because PMT did

not produce the freight bill. There is no causal link between the alleged exclusive use and the damage. The exclusive use argument only goes to the limitation of liability, and does not impact the fact PMT failed to assert a timely claim and failed to bring a Complaint within the required time period. The PMT Bill of Lading controls and it does not state as a term or condition "exclusive use."

"Speculation, unsupported by facts in the record, is insufficient to create a genuine issue of material fact and falls short of what is required to survive summary judgment." See Anderson v. Liberty Lobby, Inc., at 252.

There are no issues of fact (much less issues that are both genuine and material) relating to PMT's defective claim or PMT's failure to file a lawsuit within the period of limitations. Under no facts could PMT recover anything greater than the maximum amount of the capped damages as per the Bill of Lading and Tariff, which is $5,600.00.

## CONCLUSION

For all of the foregoing reasons, the Motion for Summary Judgment should be granted.

/s/ William D. Bierman
William D. Bierman, Esq.
And
/s/ Thomas C. Martin
Thomas C. Martin, Esq.

Nowell Amoroso Klein Bierman, P.A.
155 Polifly Road
Hackensack, New Jersey 07601
201-343-5001 (t)
201-343-5181 (f)
Attorneys for Third-Party
Defendants, UPS Ground Freight,
Dated: January 24, 2011    Inc. d/b/a UPS Freight, f/k/a
Overnite Transportation

15