<u>**NOT FOR PUBLICATION**</u>                         [Docket Entry Nos. 45 and 55]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

Holtec International
Corporation, a Delaware
Corporation,

      Plaintiff,

   v.

Preferred Metal Technologies,
Inc., an Illinois Corporation,

      Defendant/Third Party
      Plaintiff

   v.

UPS Ground Freight, Inc.,
d/b/a UPS Freight, f/k/a
Overnite Transportation,

      Third-Party Defendant.

Civil No. 09-274
(RMB/AMD)


**OPINION**

Appearances:

    Steven Kudatzky, Esquire
    6000 Sagemore Drive, Suite 6301
    Marlton, New Jersey 08053
      Attorney for Plaintiff

    Scott L. Haworth, Esquire
    Haworth Coleman & Gerstman, LLC
    45 Broadway, 21st Floor
    New York, New York 10006
      Attorney for Defendant/Third-Party Plaintiff Preferred
      Metal Technologies, Inc.

    Thomas C. Martin, Esquire
    Nowell, Amoroso, Klein, Bierman, P.A.

1

155 Polifly Road
Hackensack, New Jersey 07601
    Attorney for Third-Party Defendant UPS Ground Freight
    Inc., d/b/a UPS Freight, f/k/a Overnite Transportation

**BUMB**, United States District Judge:

I. <u>**Introduction**</u>

Third-Party Defendant UPS Ground Freight Inc., d/b/a UPS Freight, f/k/a Overnite Transportation ("UPS"), moves for summary judgment dismissing the Complaint filed by Third-Party Plaintiff Preferred Metal Technologies, Inc. ("PMT") and to strike an affidavit submitted by PMT in opposition to summary judgment. For the following reasons, UPS's motion for summary judgment is granted, in part, and denied, in part. UPS's motion to strike is denied.

II. <u>**Background**</u>

The following facts are not in dispute. Holtec International Corporation ("Holtec") sold two crates of "RackSavers," fabricated borated aluminum panels, to Florida Power & Light Company ("FP&L").[1] UPS's Statement of Undisputed Material Facts ("UPS SOF") ¶¶ 2-4; PMT's Response Statement of Undisputed Material Facts ("PMT RSOF") ¶¶ 2-4. PMT manufactures the RackSavers. <u>Id.</u> PMT used UPS as the motor carrier to transport the two crates to FP&L. UPS SOF ¶¶ 8-9; PMT RSOF ¶¶ 8-9.

_____

[1]FP&L is not a party to this action.

2

The RackSavers arrived at FP&L damaged.  UPS SOF ¶ 2; PMT RSOF ¶ 2.  PMT notified UPS of the damage, and on December 27, 2005, PMT sent a "Claim for Loss or Damage" to UPS for the damaged shipment.  UPS SOF ¶ 19; PMT RSOF ¶ 19; Laverty Decl. Ex. C. in Support of Summ. J.  In the section that called for the amount of the claim, PMT wrote "To Be Determined."  Laverty Decl. Ex. C.  UPS responded to PMT's claim on January 4, 2006 stating, "We acknowledge receipt of the above referenced claim.  However, before the investigation can begin we are requesting additional information indicated by the document(s) below - Amount of Claim and How Determined."  UPS SOF ¶ 24; PMT RSOF ¶ 24; Laverty Decl. Ex. D.  In response to UPS's letter, PMT sent three letters updating UPS on the status of its claim dated:  July 31, 2006, November 27, 2006, and March 20, 2008.  PMT Counter Statement of Facts ("CSOF") ¶¶ 16-18; Haworth Decl. Ex. J, K, L in Opp. to Summ. J.

In its motion for summary judgment, UPS argues:  1) the Third-Party Complaint is time-barred because PMT failed to file an appropriate "claim," as that term is defined in 49 C.F.R. § 1005.2, an implementing regulation of the Carmack Amendment, 49 U.S.C. § 14706; 2) alternatively, PMT failed to file its Complaint within the required two-year statute of limitations after UPS denied its claim; and 3) even if PMT has a viable claim, such claim is limited to $5,600 pursuant to the rate set

forth in UPS's freight tariff.[2]

## III. **Standard of Review**

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" Id. (quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998)). Upon such a showing, the burden shifts to the non-moving party to produce evidence of a genuine, factual dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture and speculation will not defeat summary judgment.

---

[2] UPS moved to strike the affidavit of Timothy Stewart, which was provided by PMT in support of their opposition to UPS's motion to dismiss. The Court finds that the affidavit complies with Federal Rule of Civil Procedure 56. Accordingly, UPS's motion is denied.

<u>Orsatti v. N.J. State Police</u>, 71 F.3d 480, 484 (3d Cir. 1995).

When considering a summary judgment motion, the Court does not weigh evidence; rather, all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." <u>Meyer v. Riegel Products Corp.</u>, 720 F.2d 303, 307 n.2 (3d Cir. 1983).  However, a mere "scintilla of evidence," without more, will not give rise to a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 252.  Summary judgment is appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party ...."  <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a "fair-minded" jury could "reasonably" decide,'...."  <u>Williams v. Borough of West Chester, Pa.</u>, 891 F.2d 458, 460 (3d Cir. 1989) (quoting <u>Anderson</u>, 477 U.S. at 265 (Brennan, J., dissenting).

**IV.  <u>Analysis</u>**

**A.  Validity of PMT's Claim**

The Carmack Amendment, 49 U.S.C. § 14706, defines a common carrier's liability for goods damaged during shipment and, through its implementing regulations, specifies the requirements for filing a damages claim.  UPS argues that PMT's claim was defective because it failed to set forth the amount it was seeking in the claim, that is, it listed "To Be Determined" only,

and no amount.  Pursuant to 49 C.F.R. § 1005.2(b), a claim must:

> (1) Contain[] facts sufficient to identify the baggage or shipment (or shipments) of property, (2) assert[] liability for alleged loss, damage, injury, or delay, and (3) mak[e] claim for the payment of a <u>specified or determinable</u> amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage....

<u>Id.</u> (emphasis added).

The Third Circuit construed the meaning of "specified" and "determinable" in <u>Lewis v. Atlas Van Lines, Inc.</u>, 542 F.3d 403, 409-10 (3d Cir. 2008).  There, the Court clearly held that "a claim that is 'determinable' need not include any dollar amount at all." <u>Id.</u> at 409.  Rather, "all that is required is that the claim provide enough information to make it possible to assign a dollar amount to the claim at some point after the claim itself is filed." <u>Id.</u>  In other words, "[v]alid claims are determinable not because they include some dollar amount, but because they provide enough information about the nature and extent of the carrier's liability to allow the carrier to understand its potential exposure to liability." <u>Id.</u> at 411.

Accordingly, in <u>Lewis</u>, the Third Circuit permitted claims against a carrier charged with moving belongings by a certain date so that the plaintiffs could meet a condition related to the sale of their residence.  <u>Id.</u> at 405.  After the sale fell through as a result of the delayed move, the plaintiffs provided the carrier with a demand letter requesting "damages equal to the

'loss of profit on the sale of their residence, additional mortgage payments that [plaintiffs] have had to pay on two mortgages on their Pennsylvania residence which otherwise would have been paid off at closing, and various other miscellaneous expenses they would not have otherwise incurred.'"  Id. at 406. The letter further explained that the plaintiffs "could not provide an exact dollar amount for their losses 'until they are able to sell their Pennsylvania residence.'"  Id.  Reviewing the plaintiffs' initial demand letter, the Third Circuit concluded that the letter informed the carrier as to "the nature of that claim, and how the amount of it would ultimately be determined," i.e., that the plaintiffs could not quantify their damages until they sold their residence.  Id. at 411.  By contrast, the Circuit rejected plaintiffs' claim for "miscellaneous damages," finding that such a claim was not "determinable" because it did not inform the carrier "of the nature of the claim or the extent of [the carrier's] liability."  Id.

Similarly, PMT informed UPS of the nature of PMT's claim and how the damages amount would ultimately be determined.  The record reflects an on-going dialogue between representatives from PMT and UPS regarding:  the nature of the damages, inspection of the damages, repairs made by PMT's client to permit transport of the damaged product, and transport of the damaged goods back to PMT.  See Haworth Decl. Ex. D-G.  The letter accompanying PMT's

claim form informed UPS that PMT could not "provide a cost of this claim (or supporting documentation) at this time due to the delay in the return shipment of the damaged goods and the ongoing and extensive process of inspection of and repairs to the products contained in the damaged crate." Id. at Ex. H.  PMT sent a subsequent letter on July 31, 2006, informing UPS that PMT was still "negotiating with the recipient of the shipment over the status, repairability and acceptability of the damaged goods" and that "the extent of [PMT's] exposure ha[d] not been determined." Id. at Ex. J.  Again, on November 27, 2006, PMT informed UPS that negotiations continued and averred that UPS "remain[ed] responsible for the damage to [PMT's] product and for the costs to both PMT and [PMT's] customer that [were] related to that damage.  Be advised that [PMT] will submit those costs as soon as they have been determined in their entirety." Id. at Ex. K.  On March 20, 2008, PMT sent UPS a letter stating that PMT had not reached agreement with its customer regarding repairs to the damaged products and that PMT would advise UPS "if and when [PMT's customer] ma[de] any monetary claim against PMT" and would "seek to recover from [UPS] any losses incurred by PMT due to the damage to the components caused in the shipping process." Id. at Ex. L.

Clearly, these letters informed UPS of the nature of PMT's claim and how the claim amount would ultimately be determined.

Indeed, the initial demand letter accompanying PMT's claim form
put UPS on clear notice that PMT would look to UPS to recover
costs related to PMT's damaged products and that those costs
could not be calculated until negotiations over the damage
concluded with PMT's customer.  PMT provided UPS with enough
information to make it possible to assign a specific dollar
amount at some future point.  In sum, the Court finds that PMT
submitted a "determinable" claim in compliance with 49 C.F.R.
1005.2 and within the nine-month window provided for in 49 U.S.C.
§ 14706(e).

    UPS further argues that even assuming PMT filed a proper
claim, UPS denied the claim on January 4, 2006.  As a result,
PMT's Third-Party Complaint, filed on May 14, 2009, is time-
barred.  Pursuant to the Carmack Amendment,

> A carrier may not provide by rule, contract, or otherwise, a
> period of less than 9 months for filing a claim against it
> under this section and a period of less than 2 years for
> bringing a civil action against it under this section.  The
> period for bringing a civil action is computed from the date
> the carrier gives a person written notice that the carrier
> has disallowed any part of the claim specified in the
> notice.

49 U.S.C. § 14706(e)(1); see also Laverty Decl. Ex. A (UPS
Freight Tariff Item 825, "Cargo Claim Filing Time Limits").

    For UPS's January 4, 2006-letter to constitute a
disallowance notice, the letter needed to use terms that
"sufficiently convey[ed] to the claimant that the claim [wa]s
disallowed."  Polaroid Corp. v. Hermann Forwarding Co., 541 F.2d

9

1007, 1011 (3d Cir. 1976).  In other words, "to have legal effect," UPS's letter had to constitute a "clear, final and unequivocal" notice of disallowance.  Id. at 1012; see also Chesapeake and Ohio Ry. Co. v. U.S. Steel Corp., 878 F.2d 686, 690 (3d Cir. 1989) ("To be effective, a notice of disallowance must convey the idea of denial of the carrier's liability.").

UPS's argument that it disallowed the claim is disingenuous.  The January 4, 2006-letter did not plainly convey that UPS denied PMT's claim.  Rather, UPS informed PMT that UPS needed more information to make such a determination.  See Haworth Decl. Ex. I ("before the investigation can begin we are requiring additional information . . . thank you for your cooperation."). This language stands in stark contrast to the language at issue in Polaroid Corp., which the Circuit agreed did constitute sufficient notice of disallowance:

> The April 9 letter clearly stated Transport's position on the dealer invoice price issue:  "Your company would not be entitled to a double profit. . . . Your claim should include only your manufactured cost figures."  The October 19, 1970 letter reemphasized that position and indeed included a general release based on what Transport estimated to be Polaroid's manufactured cost.  Finally, the February 9 letter firmly and clearly stated Transport's view that Polaroid was not entitled to dealer invoice price on either the Hermann or Kowalsky claim.

541 F.2d at 1012 (internal citations omitted).

Moreover, the correspondence between PMT and UPS that followed the January 4, 2006-letter demonstrated conduct inconsistent with a denial of the claim.  See Cordingley v.

10

Allied Van Lines, Inc., 563 F.2d 960, 964 (9th Cir. 1977) ("The clarity of the notice is properly ascertained by viewing it in context."). PMT continued to hold UPS liable and informed UPS that it was attempting to ascertain an accurate, reasonable amount for the damaged goods. No doubt, UPS could have informed PMT at any time that it was no longer willing to wait for PMT to submit an estimate by issuing an actual disallowance letter. It did not do so. See John Morrell & Co. v. Chicago R. I. & P. R. Co., 495 F.2d 331, 333 (7th Cir. 1974) (finding carrier's letter did not constitute a disallowance notice in light of subsequent communications between the parties). Accordingly, the Court does not find that UPS's January 4, 2006-letter conveyed clear, final and unequivocal notice to PMT that UPS had disallowed PMT's claim. Because the January 4, 2006-letter did not constitute a disallowance notice, Plaintiff's Complaint is not time-barred.

**B.   Limitation of Liability**

Finally, UPS argues that even if PMT has a viable claim, such claim is limited to $5,600 under the rate set forth in UPS's freight tariff. Pursuant to 49 U.S.C. § 14706(a)(1), when a motor carrier loses or injures the property it is carrying, the carrier is liable for "actual loss or injury to the property." However, the statute also permits carriers to limit their liability:

> ... a carrier providing transportation or service ... may ... establish rates for the transportation of property ...

11

under which the liability of the carrier for such property
is limited to a value established by written or electronic
declaration of the shipper or by written agreement between
the carrier and shipper if that value would be reasonable
under the circumstances surrounding the transportation.

49 U.S.C. § 14706(c)(1)(A).

The parties do not dispute that PMT prepared the bill of lading and incorporated the UPS Freight Tariff. See Laverty Decl. Ex. B ("RECEIVED subject to the classifications and lawfully filed tariffs in effect on the date of the issue of this Bill of Lading."). Nor do the parties dispute that PMT failed to declare a shipment value on the Bill of Lading. Id.; see also Haworth Decl. Ex. B, Stewart Aff. ("PMT did not declare a value on the Bill of Lading because it believed that its risk was adequately protected by the requisite 'exclusive use' shipment."). UPS argues that because PMT failed to declare a value for its cargo on the bill of lading, UPS's liability is limited to its tariff rate. See Laverty Decl. Ex. A ("Carrier's liability for loss, damage or destruction to any shipment or part thereof ... is limited to the actual invoice value of the commodities or articles lost, damaged or destroyed, or $2.00 per pound per package, whichever is less ...."). 

PMT urges this Court to apply the "material deviation doctrine," which prevents application of the limitation of

12

liability.[3]  Specifically, PMT urges application of the doctrine

---

[3]Under this doctrine, originating from admiralty law, "a contractual limitation of liability will not restrict the shipper's recovery where the carrier has breached a material or essential provision of the underlying agreement, for such a deviation arguably represents a complete failure of consideration and compels rescission of the entire carriage contract." Rocky Ford Moving Vans, Inc. v. United States, 501 F.2d 1369, 1372 (8th Cir. 1974). "Whether the material deviation doctrine has application to overland transportation contracts governed by the Carmack Amendment is far from settled." KLLM, Inc. v. Watson Parma, Inc., 634 F.Supp.2d 699, 708 (S.D.Miss. 2009). The Fifth Circuit has held that the material deviation doctrine does not apply in the motor carrier context. Rocky Ford Moving Vans, Inc., 501 F.2d at 1372 ("While the Amendment itself is silent with respect to 'material deviations,' ... that admiralty law doctrine has no application in the context of regulated interstate commerce, which is governed by the overriding federal policy of uniformity."). Other courts have followed this lead. See, e.g., KLLM, Inc., 634 F.Supp.2d at 708; Conoco, Inc. v. Andrews Van Lines, Inc., 526 F.Supp. 720, 722 (D.C. Okl. 1981).
Some courts, however, have adopted the doctrine in the motor carrier context. See NipponKoa Ins. Co. v. Watkins Motor Lines, Inc., 431 F.Supp.2d 411, 418 (S.D.N.Y. 2006); Praxair Inc. v. Mayflower Transit, Inc., 919 F.Supp. 650, 656 (S.D.N.Y. 1996). Although acknowledging that "[w]holesale importation of that doctrine from admiralty to overland or airborne shipping ha[d] been rejected" in the majority of circuits, the Court in Praxair, nonetheless, held that

> in cases of shipment by air, rail, and truck where the
> shipper paid an additional charge to ensure specialized
> safety measures to reduce the risk of damage to its cargo,
> the carrier's failure to perform those very measures which
> resulted in damage to the cargo has been found to be a
> sufficient basis upon which the liability limitation
> provision in the shipping agreement may be rescinded.

919 F.Supp. at 656. See also Hill Const. Corp. v. American Airlines, Inc., 996 F.2d 1315, 1319 (1st Cir. 1993) (limiting application of doctrine to situations where party failed "to live up to ... separate, risk-related promises (special to the particular shipment at issue)").
Although some precedent exists, non-binding on this Court, for importing the material deviation doctrine into the motor carrier context, as set forth herein, the Third Circuit rejected

here because UPS made a separate, risk related promise to ship
the RackSavers by "exclusive use," meaning not shipped with other
cargo and handled by only authorized personnel.  (UPS maintains
that the parties never agreed to the "exclusive use" term.)  This
"material deviation," however, assuming such term existed in the
parties' agreement, does not prohibit summary judgment.

        The Third Circuit, deciding a factually similar case,
rejected the material deviation exception.  In <u>American Cyanamid</u>
<u>Co. v. New Penn Motor Exp., Inc.</u>, the Court held that "nothing
short of intentional destruction or conduct in the nature of
theft of the property will permit a shipper to circumvent the
liability limitations in a released value provision."  979 F.2d
310, 315-16 (3d Cir. 1992).  The Court considered a shipper's
argument to recover the contract value of cargo, which the
carrier had permitted to freeze despite receiving explicit
instructions to prevent freezing.  Rejecting the contention that
a party in breach of a material contract term should not then
"invoke the benefits of that same contract," the Court found
"that a liability limitation is unaffected by a breach of an
essential term of contract."  <u>Id.</u> at 316 (quoting <u>Quasar Co. v.</u>
<u>Atchison, Topeka and Santa Fe Ry. Co.</u>, 632 F.Supp. 1106, 1108

---

application of the doctrine in <u>American Cyanamid Co. v. New Penn</u>
<u>Motor Exp., Inc.</u>, 979 F.2d 310, 315-16 (3d Cir. 1992).  This
Court sees no reason why the Third Circuit would revisit this
decision.

(N.D. Ill. 1986)).  Relevant to the Court's analysis was the fact
that a sophisticated shipper made a choice to accept the released
value established by the tariff rate by not paying for a higher
level of protection.  In other words, the shipper chooses to
accept the risk that a carrier will fail to abide by the
shipper's instructions by accepting the released value
established by the tariff rate.  The Court explained its
reasoning for imposing such strict terms on a shipper:

> This is an understandable and desirable result, as a shipper
> can protect itself from loss by paying for a higher level of
> protection.  Furthermore, when goods are lost or destroyed
> during transportation, there probably will be many
> circumstances in which a shipper will be able reasonably to
> characterize the carrier's conduct as willful, and a rule of
> law allowing recovery in excess of the released value, if
> willfulness can be demonstrated, will lead to increased
> litigation.  We think it better that there be certainty in
> these commercial settings, particularly since the shipper
> can protect itself by paying for a higher level of
> protection.

Id. at 315-16.

PMT presents nothing by which a reasonable jury could infer
intentional destruction or theft.  PMT's description of UPS's
alleged severe mishandling of the RackSavers, i.e., "it appeared
that the crate ... was dropped from a significant height" and
"[t]he other crate was evidently penetrated by a forklift," if
credited, could constitute willful neglect.  See Haworth Decl.
Ex. B, Stewart Aff.  Such conduct would not, however, negate the
liability limitation applicable here.

Finally, UPS argues that, based on the description provided

15

in the Bill of Lading, the RackSavers qualify as specific commodities, namely "[f]urniture, metallic or wooden" or "[t]ops, cabinet, chest, counter, desk, stool, table," such that a $2.00 per pound per package rate applies.  See Laverty Decl. Ex. A. PMT disputes UPS's characterization of the RackSavers, arguing that if UPS is entitled to limit its liability, the general liability rate of $25.00 per pound per package applies.  This is a genuine dispute that must be decided by a jury.

## IV.  Conclusion

For the aforementioned reasons, UPS's motion for summary judgment is granted, in part, and denied, in part.  UPS's motion to strike is denied.  An accompanying Order shall issue.


Dated: April 13, 2011                    s/Renée Marie Bumb
                                         RENÉE MARIE BUMB
                                         UNITED STATES DISTRICT JUDGE